IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RACHEL GREENE d/b/a RACHEL )
BOLDT, )
 )
     Plaintiff, )
 )    **Case No. 22-cv-2727**
vs. )
 )
WOODLAWN UNIT SCHOOL )
DISTRICT #209, MARK )
RICHARDSON, MIKE )
RICHARDSON, and DANNY DEES,

     **Defendants.**

<u>MEMORANDUM & ORDER</u>

**DUGAN, District Judge**

Pending before the Court is a Motion to Dismiss Counts I and II of the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendant Woodlawn Unit School District #209 (Doc. 31). Plaintiff Rachel Greene opposes the motion (Doc. 35). For the reasons set forth below, the motion is **DENIED**.

## I.    Background

On November 22, 2022, Plaintiff Rachel Greene ("Plaintiff") filed a nine-count Complaint, asserting causes of action arising from alleged childhood sexual abuse committed by teachers and coaches employed by Woodlawn Unit School District #209 (the "School District" or "District"). The abuse allegedly began in 1995, when Plaintiff was in the 4th Grade at the District's Woodlawn Grade School and continued through 2000. The Complaint brings one federal claim under Title IX, 20 U.S.C. 38 § 1681 *et seq.* directed against the School District for responding with deliberate indifference to reports

regarding Defendant Mark Richardson's sexually inappropriate conduct on school grounds, with plaintiff, and with other female students (Count I). The Complaint also directs an intentional tort claim under Illinois law against the School District for willful and wanton misconduct (Count II) and seven intentional tort claims under Illinois law against Plaintiff's alleged abusers (Defendant Mark Richardson, a teacher and basketball coach for District 209; Defendant Mike Richardson, a coach for District 209, and Mark Richardson's brother; and Defendant Danny Dees, a teacher for District 209).

In her Complaint, Plaintiff alleges the following. In 1995, when Plaintiff was in the 4th Grade, Mark Richardson began inappropriately touching her in his classroom and grooming her for a sexual relationship (Doc. 1 ¶¶ 12-15). In the Spring of 1996, when Plaintiff was 10 years old, Mark Richardson convinced her to come to his house where he had sexual intercourse with her while Defendant Mike Richardson and his wife were present (Doc. 1 ¶ 19). Mike Richardson filmed the rape (Doc. 1 ¶ 19). During the remainder of Plaintiff's 4th Grade year, Mark Richardson repeatedly forced her to engage in sexual intercourse (Doc. 1 ¶ 20).

In the Fall of 1996, when Plaintiff was in 5th Grade, Mark Richardson regularly removed her from class and took her to his classroom, which was located in a double wide trailer outside of the main school building (Doc. 1 ¶ 24). Plaintiff's 5th Grade teacher was aware she was being removed from class during the school day and going to Mark Richardson's classroom. Plaintiff was also sexually abused and raped at Mark Richardson's home (Doc. 1 ¶ 24). On one occasion, in 1997, Mark Richardson threatened

Plaintiff with a knife if she would not have sexual intercourse with Defendant Danny Dees (Doc. 1 ¶ 25).

Plaintiff was also removed from basketball practice to be sexually abused and raped at other locations. On one occasion, Mark Richardson arranged for Mike Richardson to drive Plaintiff to a "white house" in the country where Plaintiff was forced to undress and other men viewed her naked, touched her sexually, and kissed her (Doc. 1 ¶ 26). Mike Richardson returned Plaintiff to basketball practice when it was over (Doc. 1 ¶ 26). From 1996 through 1998, Plaintiff was repeatedly removed from basketball practices and taken to the "white house" and/or a shed where strange men would sexually abuse, rape, and torture her (Doc. 1 ¶ 27). Plaintiff believes Mark Richardson and Mike Richardson were compensated for selling her for these sex acts (Doc. 1 ¶ 28). Mark Richardson continued sexually assaulting Plaintiff through the year 2000, and Mike Richardson continued sexually assaulting Plaintiff through the year 1998 (Doc. 1 ¶¶ 30-32, 34).

In May 2004, Plaintiff graduated from high school (Doc. 1 ¶ 37). Following her graduation, Mark Richardson and Mike Richardson continued acts of intimidation and sexual abuse in an effort to keep Plaintiff from coming forward (Doc. 1 ¶ 38). On or about January 2014, Plaintiff had flashbacks and memories of sexual abuse after seeing a post on social media (Doc. 1 ¶ 40). At or about that time, Plaintiff began to realize that she had been the victim of sexual abuse and that her sexual relationship with Mark Richardson, and others, was inappropriate and a violation of the law (Doc. 1 ¶ 40). On or about May

2014, Mark Richardson showed up at Plaintiff's apartment, picked up her 11-month-old daughter, and threatened Plaintiff about coming forward.

During the 1995/1996 school year, a teacher employed by District 209 witnessed Plaintiff sitting on Defendant Mark Richardson's lap in the classroom with the lights turned off with his hand on her leg (Doc. 1 ¶ 22). The teacher reported this information to the building Principal, Steve Danner, but he took no action. As the abuse continued, other teachers were aware of Mark Richardson's suspicious contact with Plaintiff, including that he was regularly removing Plaintiff from her classroom and taking her to his classroom which was located in a double wide trailer outside of the main school building (Doc. 1, ¶ 24). In addition, on one occasion, a teacher observed Mark Richardson yelling at Plaintiff in a closet while holding her by the wrist (Doc. 1 ¶ 33). The Complaint further alleges that, between 1995 and 2000, the District received multiple reports regarding Mark Richardson's inappropriate conduct while on school grounds, including: (1) inappropriately touching female students in a sexual nature; (2) making inappropriate sexual comments to female students; (4) watching underage female students undress in the locker room; and (5) exposing his genitalia at basketball games (Doc. 1 ¶¶ 33, 55-63). Despite having this information, the School District did not initiate an investigation or report the inappropriate conduct to the authorities, violating the District's mandatory reporting obligations. (Doc. 1 ¶¶ 61-62). As a result, the sexual abuse continued (Doc. 1 ¶ 64.

## II.      Legal Standard

To overcome a Rule 12(b)(6) motion, "a complaint must 'state a claim to relief that is plausible on its face.' " *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This Court "must accept as true all factual allegations in the ... complaint and draw all permissible inferences" in Plaintiff's favor. *Id.* (quoting *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (internal quotation marks omitted)).

"[A] complaint need  not anticipate or overcome affirmative defenses such as the statute of limitations."    *Hollander v. Brown,* 457 F.3d 688, 691 n. 1 (7th Cir. 2006) (citing *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)). As such, dismissal is only appropriate "if a plaintiff alleges facts sufficient to establish a statute of limitations defense." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015); *see also* *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014) ("When a defendant charges noncompliance with the statute of limitations, dismissal under Rule 12(b)(6) is irregular, for the statute of limitations is an affirmative defense.") (internal quotation marks and alterations omitted). "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately

trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). These pleading standards apply to both federal and state law claims. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

### III.   Discussion

#### A.  Title IX Claim (Count I)

##### 1.  *The Parties' Arguments*

The School District contends that Plaintiff's Title IX claim accrued in 2004, when she reached the age of majority, and that, applying Illinois' two-year statute of limitations for personal injury actions, it expired in 2006. Plaintiff does not dispute that Illinois' two-year statute of limitations for personal injury actions has previously been applied to Section 1983 claims that pertain to childhood sexual abuse. However, Plaintiff contends enactment of the Eliminating Limits to Justice for Child Sex Abuse Victims Act of 2022 (the "Eliminating Limits to Justice Act") changed the federal landscape with respect to cases of sexual abuse. Plaintiff argues that, under the Eliminating Limits to Justice Act, "it is now consistent with federal law for a Title IX claim arising from the sexual abuse of a minor to have no statute of limitations at all or, in the case of Illinois, for courts to look to [the Illinois] Childhood Sexual Abuse Act for the applicable statute of limitations." (Doc. 35, p. 7). According to Plaintiff, pursuant to the Illinois Childhood Sexual Abuse Act, 735 ILCS 5/13-202.2, Plaintiff's claim accrued in 2014 (when Plaintiff began having flashbacks and memories of the sexual abuse). Plaintiff further contends that, under later

6

versions of the Childhood Sexual Abuse Act (amendments enacted in 2011 and 2014), her Title IX claim against the District is timely.

### 2. *Eliminating Limits to Justice for Child Sex Abuse Victims Act of 2022*

On September 16, 2022, President Biden signed into law PL 117-176, which eliminates the statute of limitations for certain criminal conduct when the victim seeks recompense through a civil suit. *Id*, 136 Stat. 2108, September 16, 2022.[1] As is discussed more fully below, because Title IX does not include a statute of limitations, federal courts have consistently held that the applicable limitations period should be borrowed from the forum state's general or residual statute of limitations governing personal injury

---

[1] In relevant part, 18 U.S.C. § 2255, reads as follows:

Civil remedy for personal injuries

(a) In general.--Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252 A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred. The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate.

(b) Statute of limitations.--There shall be no time limit for the filing of a complaint commencing an action under this section.

Section 3 of the Eliminating Limits to Justice Act addresses the applicability of the law and reads as follows:

This Act and the amendments made by this Act shall –

(1) take effect on the date of enactment of this Act; and
(2) apply to –
(A) any claim or action that, as of the date described in paragraph (1), would not have been barred under section 2255(b) of title 18, United States Code, as it read on the day before the date of the enactment of this Act; and
(B) any claim or action arising after the date of enactment of this Act. Approved September 16, 2022.

actions (in Illinois, that is a two-year limitations period). Plaintiff contends that the Eliminating Limits to Justice Act *may* impact how the Seventh Circuit evaluates the limitations period applicable to Title IX actions involving the sexual abuse of minors, as well as other federal actions involving the same type of claims. The thrust of Plaintiff's argument is that, given the elimination of the statute of limitations in claims brought pursuant to § 2255, borrowing Illinois' much shorter two-year limitations period is no longer consistent with federal law. Plaintiff, however, cites to no authority (nor is the Court aware of any authority) suggesting that the statute of limitations contained in the 18 U.S.C. § 2255 has any impact on the statute of limitations applicable to Title IX claims.

Prior to the version of 18 U.S.C. § 2255 now in effect, the law provided a ten-year statute of limitations which began to run on the date of discovery of the violation or injury, or on the date the victim reaches the age of 18. PL 115-126, 132 Stat. 318, February 14, 2018. If Plaintiff's argument had any merit, the undersigned would expect to find authority applying § 2255's 10-year limitations period to Title IX claims that arose while that version of the law was in effect. The Court has found no such authority. Instead, as is discussed in detail below, federal courts have consistently borrowed the limitations period from the forum state's general or residual personal injury statute, even when such limitations period was less than the 10-year limitations period contained in 18 U.S.C. § 2255. The Court, therefore, declines to guess what impact, if any, the recent amendment to § 2255's limitations period might have on other federal claims involving the sexual

abuse of minors. Instead, the Court will apply existing precedent to determine the limitations period applicable to Plaintiff's Title IX claim.[2]

### 3. *Illinois' Two-Year Statute of Limitations for Personal Injury Actions Applies to Plaintiff's Title IX Claim*

As previously noted, Title IX does not contain a statute of limitations. The School District contends the Court should apply Illinois' two-year statute of limitations for personal injury actions. In support of its argument, the District directs the Court to authority pertaining to the applicable limitations period in actions bringing claims under § 1983, which, like Title IX, does not contain a statute of limitations. Plaintiff contends the Court should not rely on these decisions and encourages the Court to apply Illinois' Childhood Sexual Abuse Act limitations period, which is anywhere from ten years to no limitations period, depending on the applicable version of the statute.

The Court begins its analysis by reviewing how courts have analyzed § 1983 statute of limitations issues over time. Because § 1983 does not include a specific statute of limitations, courts must borrow "the most appropriate or analogous state statute of limitations." *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660 (1987); 42 U.S.C. § 1988. *See also Bennett v. Tucker*, 827 F.2d 63, 67 (7th Cir. 1987). Historically, when making this determination, courts would attempt to match the specific federal claim they were considering with the most similar state law claim they could find and apply the

---

[2] Plaintiff argues that, under the Eliminating Limits to Justice Act, "it is now consistent with federal law for a Title IX claim arising from the sexual abuse of a minor to have no statute of limitations at all or, in the case of Illinois, for courts to look to [Illinois'] Childhood Sexual Abuse Act for the applicable statute of limitations." (Doc. 35 p. 7). As is discussed more fully *infra,* Plaintiff's proposal is inconsistent with Supreme Court precedent intended to avoid "confusion and uncertainty" in evaluating statute of limitations issues. *Owens v. Okure*, 488 U.S. 235, 240 (1989).

associated limitations period. *Wilson v. Garcia,* 471 U.S. 261, 264–66, 271–75 (1985) ("*Wilson*"). But this process was time consuming and led to confusion, uncertainty, and lack of uniformity. *See generally Id.* 272 n. 25; *Owens v. Okure,* 488 U.S. 235, 240 (1989) ("*Owens*") ("The practice of seeking state-law analogies for particular § 1983 claims bred confusion and inconsistency in the lower courts and generated time-consuming litigation."). *See also Woods v. Illinois Dep't of Child. & Fam. Servs.*, 710 F.3d 762, 765 (7th Cir. 2013) ("Furthermore, this approach lacked any semblance of uniformity because different limitations periods applied to the various § 1983 claims brought in a particular state; indeed, where a plaintiff asserted more than one claim under § 1983, different statutes of limitations might apply in the same case.").

In *Wilson* the Supreme Court found that "federal interests in uniformity, certainty, and the minimization of unnecessary litigation" required application of a single statute of limitations for Section 1983 actions. *Id.* at 275.[3] Accordingly, the Supreme Court instructed courts to read § 1988 "as a directive to select, in each [s]tate, the one most appropriate statute of limitations for all § 1983 claims," which, according to the Supreme Court, was "the tort action for the recovery of damages for personal injuries." 471 U.S. at 271–75.

Although *Wilson* streamlined this area of the law, "it did not address what a court should do when a state has multiple limitations periods applicable to different categories of personal injury claims." *Woods v. Illinois Dep't of Child. & Fam. Servs.*, 710 F.3d 762, 765

---

[3] The Court further reasoned that "a simple, broad characterization of all § 1983 claims best fits the statute's remedial purpose." *Wilson*, 471 U.S. at 272.

(7th Cir. 2013). The Supreme Court sought to clarify the issue in *Owens v. Okure,* 488 U.S. 235 (1989), by "provid[ing] courts with a rule for determining the appropriate personal injury limitations statute that can be applied with ease and predictability in all 50 States." In *Owens,* the Supreme Court considered which of two New York limitation statutes applied to § 1983 claims: a one-year statute applicable to certain intentional torts or a three-year residual statute applicable to all other personal injury actions. The Court held that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Id.* at 249–50. Thus, under *Wilson* and *Owens,* a state's general personal injury statute of limitations – not a collection of specialized statutes of limitations – is applied to Section 1983 claims.

Applying the Supreme Court's reasoning in *Wilson* and *Owens,* the Seventh Circuit has held that the statute of limitations applicable to a 1983 action pertaining to the sexual abuse of a minor is the two-year statute of limitations for general personal injury actions, 735 ILCS 5/13-202, not the twenty-year limitation period contained in the Illinois Childhood Sexual Abuse Act, 735 ILCS 5/13-202.2. *Woods v. Illinois Dep't of Child. & Fam. Servs.,* 710 F.3d 762 (7th Cir. 2013). Plaintiff suggests that, because *Woods* involved a § 1983 claim, it is not applicable in the instant case. But every circuit to have considered the matter in a published opinion has concluded that Title IX should be treated like § 1983 for limitations purposes. *King-White v. Humble Indep. Sch. Dist.,* 803 F.3d 754, 759 **(5th Cir. 2015)** (collecting cases and joining the tenth, ninth, and eighth circuits in finding that Title IX is subject to the same limitations period as § 1983); *Kane v. Mount Pleasant Cent. Sch.*

*Dist.*, No. 21-2995-CV, 2023 WL 5281533, at *4 (2d Cir. Aug. 17, 2023) ("The *Wilson* and *Owens* analysis applies with equal force to actions under Title IX).[4] Moreover, applying *Wilson* and *Owens*, federal appellate courts in the Fifth, Second, and Tenth circuits have held that the general statute of limitations for personal injury actions and not a specialized statute for sexual abuse claims applies to Title IX claims involving sexual abuse. *See Kane v. Mount Pleasant Cent. Sch. Dist.*, No. 21-2995-CV, 2023 WL 5281533, at *5 (2d Cir. Aug. 17, 2023); *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212–13 (10th Cir. 2014); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759–61 (5th Cir. 2015).

Treating Title IX like § 1983 actions for statute of limitations purposes makes sense. After all, Title IX does not exclusively pertain to sex abuse claims involving minors. Rather, like § 1983, it "embraces a broad array of actions for injury to personal rights," *Owens*, 488 U.S. at 242. Thus, as with § 1983 actions, attempting to match a specific Title IX claim with the most analogous state law claim will inevitably lead to inconsistent results that have "less to do with the general nature" of relief under the federal statute in question "than with counsel's artful pleading and ability to persuade the court that the facts and legal theories ... resemble[ ] a particular common-law or statutory cause of action." *Id.* at 240. Further, as explained by the Eighth Circuit in *Egerdahl v. Hibbing Community College*, 72 F.3d 615 (8th Cir. 1995), Title IX is "analogous to § 1983 – both

---

[4] The Seventh Circuit has not expressly addressed the issue. However, the Appellate Court has consistently applied the applicable state's general or residual statute of limitations for personal injury actions to Title IX actions. *See Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) (Illinois' two-year statute of limitations for personal injury claims applicable to any federal civil rights claims that plaintiff could assert, including claim under Title IX); *Cetin v. Purdue Univ.*, 94 F.3d 647 (7th Cir. 1996) (holding that Indiana's two-year statute of limitations for personal injury claims applied to Title IX claim and citing to cases that relied on the reasoning in *Owens* and *Wilson*).

statutes prohibit gender discrimination by state-run schools that receive federal funds." 72 F.3d at 618. Additionally, "Title IX was patterned after Title VI," and Title VI claims "are controlled by the same considerations which inhere in § 1981 and § 1983 claims.").

Considering the well-reasoned authority discussed above, the Court finds that, for statute of limitations purposes, Title IX should be treated the same as § 1983. Accordingly, Plaintiff's Title IX claims are governed by the two-year statute of limitation applicable to personal injury actions, 735 ILCS 5/13-202, and not the longer limitation period contained in the Illinois Childhood Sexual Abuse Act, 735 ILCS 5/13-202.2.

### 4. *Illinois' Closely Related Tolling Rules Apply to Plaintiff's Title IX Claim*

Because the statute of limitations for Title IX claims is borrowed from state law, state law also supplies the tolling rules for Count I. *Wilson*, 471 U.S. at 269, 105 S.Ct. 1938; *Hardin v. Straub*, 490 U.S. 536, 539 (1989); *Doe v. Howe Military Sch.*, 227 F.3d 981, 987-88 (7th Cir. 2000). To be applicable, however, the tolling rule must be "closely related" to the borrowed statute of limitation. *Wilson*, 471 U.S. at 269, 105 S.Ct. 1938 ("[T]he length of the limitations period, and closely related questions of tolling and application, are to be governed by state law."). *See also Hardin v. Straub*, 490 U.S. 536, 539 (1989) (when a federal court borrows a state's statute of limitations, it must also borrow that state's "coordinate tolling rules."). As the Ninth Circuit Court of Appeals has explained:

> It would no less frustrate "the federal interest in uniformity and the interest in having firmly defined, easily applied rules" were we to obediently apply the residual statute of limitations, only to then adopt a tort-specific tolling provision. *Wilson*, 471 U.S. at 270, 105 S.Ct. 1938 (internal quotation marks omitted). Such a holding "would succeed only in transferring the confusion over the choice among multiple [statutes of

limitations] to a choice among multiple [tolling] provisions." *Owens*, 488 U.S. at 244, 109 S.Ct. 573.

*Bonneau v. Centennial Sch. Dist. No. 28J,* 666 F.3d 577, 580 (9th Cir. 2012).

A tolling provision is "closely related when it applies to *all claims* contained within a general statute of limitations for personal injury actions, such that there is no need to analyze the nature of underlying claims." *Kane v. Mount Pleasant Cent. Sch. Dist., No. 21-2995-CV,* 2023 WL 5281533, *5 (2d Cir. Aug. 17, 2023). Accordingly, " 'generally applicable tolling provisions – such as those based on minority, incapacity, and equitable grounds – should be incorporated for use under § 1983' and Title IX." *Id. citing Varnell v. Dora Consol. Sch. Dist.,* 756 F.3d 1208, 1213 (10th Cir. 2014).

As is relevant here, under Illinois law, if a cause of action accrues while a plaintiff is a minor, the statute of limitations is tolled until the plaintiff's twentieth birthday. 735 ILCS 5/13-211(a). Accordingly, Plaintiff's Title IX claim must be tolled for any period before she turned 18. If, however, Plaintiff's cause of action did not accrue while she was a minor, this tolling provision will be irrelevant.

### 5.  *Date on Which Plaintiff's Title IX Claim Accrued*

#### a.  *Federal Law Controls Date of Accrual*

Even where the limitations period and related tolling provisions for a federal claim are borrowed from state law, the time for accrual of an action will be a question of federal law. *Wallace.* 549 U.S. at 388; *Owens.* 767 F.3d 379 at 388–89; *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016); *Wilson v. Giesen,* 956 F.2d 738, 740 (7th Cir.1992). A federal civil rights claim accrues "when the alleged constitutional violation was complete, and [when

14

the plaintiff] knew of her injury and its cause." *Watson v. Metro. Enf't Grp. Of S. Illinois,*

no. 23-1412, *2023 WL 5276607, at *2 (7th Cir. Aug. 16, 2023). See also Amin Ijbara Equity*

*Corp. v. Village of Oak Lawn,* 860 F.3d 489, 493 (7th Cir. 2017) ("Accrual 'occurs when a

plaintiff knows the fact and the cause of an injury.'") (citing *O'Gorman v. City of Chicago,*

*777 F.3d 885, 889 (7th Cir. 2015)*).

The rule that a claim does not accrue until a plaintiff discovers he has been injured

stems from what is known as the "discovery rule," and it applies to federal civil rights

claims even when the statute of limitations is borrowed from state law. *Cada v. Baxter*

*Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir. 1990). In *Cada* the Seventh Circuit provided a

more detailed analysis of the role the discovery rule plays in determining when a federal

civil rights claim accrues:

> Accrual is the date on which the statute of limitations begins to run. It is not
> the date on which the wrong that injures the plaintiff occurs, but the date—
> often the same, but sometimes later—on which the plaintiff discovers that
> he has been injured. The rule that postpones the beginning of the limitations
> period from the date when the plaintiff is wronged to the date when he
> discovers he has been injured is the "discovery rule" of federal common
> law, which is read into statutes of limitations in federal-question cases (even
> when those statutes of limitations are borrowed from state law) in the
> absence of a contrary directive from Congress.

*920 f.2d at 450.* Accordingly, in *Cada,* the plaintiff's federal civil rights claim for wrongful

termination did not accrue until the plaintiff discovered that "a decision to terminate him

had been made." *Id. See also Delaware State Coll. v. Ricks,* 449 U.S. 250, 258 (1980) (statute

of limitations commenced "at the time the tenure decision was made *and communicated to*

[the plaintiff])." (emphasis added).

*b.   The Parties' Arguments as to the Date Plaintiff's Title IX Claim Accrued*

The District contends the allegations in the Complaint plainly demonstrate that Plaintiff was "always aware" that Defendant Mark Richardson, and the other alleged perpetrators, were abusing her. The District notes the Complaint does not expressly allege that Plaintiff repressed memories of the abuse, and claims that allegations in the Complaint actually preclude such a claim. Therefore, the District argues, "[h]aving established, based on the alleged facts, that Plaintiff knew of the cause and extent of her injuries, the issue then becomes the point at which Plaintiff knew or should have known that the District ignored a complaint in violation of Title IX." (Doc. 31, p. 9).  According to the District, because of the abuse Plaintiff experienced as a minor (abuse the District claims Plaintiff was always aware of), Plaintiff *should have known* that she had a claim against the District in 2004, when she reached the age of majority. (Doc. 31, p. 9) ("upon reaching the age of adulthood in 2004, Plaintiff should have known of a potential Title IX violation, as she was certainly aware of the extreme incidents of prior sexual abuse that would undoubtedly point a reasonable person to inquire as to the District's willingness to intervene on behalf of the abused.") (Doc. 31 p. 9).

Plaintiff contends the Complaint sufficiently alleges that she repressed memories of the alleged sexual abuse until 2014 when she was triggered by a post she saw on social media and started having flashbacks and memories of the sexual abuse. Thus, Plaintiff maintains, she was not aware of the injury caused by the *alleged perpetrators* until 2014.

16

Plaintiff, however, makes no argument as to when she learned of the injury allegedly caused by *the School District.*

      c.  *Snyder-Hill v. Ohio State University*

The parties have not directed the Court to any Seventh Circuit decision addressing the accrual date for a Title IX deliberate indifference claim of the type alleged here.[5] The Sixth Circuit Court of Appeals, however, recently addressed a similar claim in *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686 (6th Cir. 2022), *cert. denied.*, 143 S. Ct. 2659 (2023).

The plaintiffs in *Snyder-Hill* brought Title IX claims alleging that Ohio State University was deliberately indifferent to the sexual abuse a university physician inflicted on them from 1978 to 1996. 48 F.4th at 706-07. As in this case, the institution asserted that the plaintiffs' Title IX claims were barred by Ohio's two-year statute of limitations for personal injury actions, arguing that plaintiffs knew or had reason to know that they were injured at the time they were abused, yet they delayed pursuing their claims for 20 years (at a minimum). The district court agreed, dismissing the plaintiffs' claims.

---

[5] The District relies on *Ernstes v. Warner*, 860 F. Supp. 1338 (S.D. Ind. Aug. 22, 1994). In *Ernstes*, the plaintiff brought a § 1983 action against a former school teacher and a school district, claiming to have been sexually molested by the teacher in the mid-1970s beginning when the plaintiff was 13 and ending when the plaintiff was 16. The lawsuit was filed in 1994. The plaintiff alleged the lawsuit was not time-barred because he suppressed the memory of the abuse until 1993. The district court dismissed the 1983 claims directed against the alleged perpetrator and against the school district on two grounds: First, it concluded that no rational trier of fact could believe that a boy molested repeatedly between his 13th and 16th birthdays would not have known what was occurring – thus there was no viable factual question as to whether the plaintiff knew of should have known of the injury and its cause. Second, the court explained, even if memory repression was a basis for application of the discovery rule, the plaintiff waited too long after discovering that he had been abused to file a lawsuit. Because the district court assumed that the accrual date for the plaintiff's claim against the school district was the same as the accrual date for the plaintiff's claim against the abuser, the undersigned is not persuaded by the analysis in *Ernestes*. As is discussed more fully herein, depending on the circumstances of the case, the accrual date for claims directed at an institution may be different than the accrual date for claims directed against the abuser.

The Sixth Circuit reversed, holding that the plaintiffs' Title IX claims accrued when they knew or should have known "that Ohio State administrators with authority to take corrective action knew of [the physician's] conduct and failed to respond appropriately." *Id*. at 705. The Sixth Circuit's analysis of the issue can be divided into three steps.

First, the Circuit found that the accrual of Title IX claims is governed by the discovery rule. *Id*. at 698-99. In so holding, the Sixth Circuit observed that "other circuits that have reached this issue have applied the discovery rule in Title IX cases."[6] *Id*. at 699.

Second, the Appellate Court explained that, under the discovery rule, a claim accrues when "a plaintiff knows or has reason to know that the defendant injured them: in other words, they must discover both their injury and its cause." *Id*. at 701. The Circuit noted that this approach "is the same as the seven other circuits to address this issue,"[7] and is consistent with the Supreme Court's decision in *United States v. Kubrick*, 444 U.S. 111, 122 (1979).

Third, the Circuit Court explained, a Title IX claim for deliberate indifference "is against a school based on the school's actions or inactions, not the actions of the person

---

[6] According to the Sixth Circuit, this includes the Seventh Circuit. *See Id*. at 699 (*citing Doe v. Howe Mil. Sch.*, 227 F.3d 981 (7th Cir. 2000)). But the Seventh Circuit did not expressly address the issue in this case. In *Doe v. Howe Mil. Sch.*, the plaintiffs claimed they suffered from a variety of forms of sexual harassment, abuse, and fraud when they attended Howe Military School. They brought claims under Title IX (quid pro quo sexual harassment and hostile environment discrimination) and Indiana state law. The district court dismissed the Title IX claims, and the state law claims as time-barred. The Appellate Court applied Indiana's discovery rule when evaluating the dismissal of the state law claims and concluded that, given controlling law from the Indiana Supreme Court pertaining to repressed memories, the claims were time-barred. The Appellate Court noted that the district court "applied the same statute of limitations, and the same analysis," to the plaintiffs' Title IX claims. But the Seventh Circuit did not directly address the district court's analysis of the Title IX claims because the plaintiffs did not challenge that analysis on appeal. *Id*. at 898.

[7] This includes the Seventh Circuit Court of Appeals. *See In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006) (the discovery rule, "postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured.").

who abused the plaintiff." *Id.* at 702. Therefore, such a claim "does not accrue until the plaintiff knows or has reason to know that the *defendant institution* injured them." *Id.* at 704 (emphasis in original). *See also Id.* at 703 ("a plaintiff could not have been alerted to protect his or her rights through a Title IX suit unless they had reason to believe that the *institution* did something (or failed to do something) that caused their injury.") (internal quotations and citation omitted, emphasis in original). Accordingly, the Appellate Court concluded, the plaintiffs' clock started only when the plaintiffs knew or should have known "that Ohio State administrators with authority to take corrective action knew of [the physician's] conduct and failed to respond appropriately." *Id.* at 705 (internal quotation and citation omitted).

Applying the above principles, the Sixth Circuit concluded that the plaintiffs' claims did not accrue until they learned the results of an independent investigation published in 2019, alerting them, for the first time, of the University's inaction. *Id.* at 705. A significant factor in concluding that the claims did not accrue until 2019, when the independent investigation was published (as opposed to the date or dates of the University's inadequate response) was who reported the alleged misconduct. As explained by the Sixth Circuit, the plaintiffs were not alleging that the University mishandled their own reports of misconduct (what is known as a post-assault Title IX claim). Rather, the plaintiffs were alleging that the University had a policy of deliberate indifference to reports of sexual misconduct, and that the University's policy of deliberate indifference exposed them to a heightened risk of injury (what is known as a "pre-assault" or "heightened risk" claim). The difference is significant because "[a] plaintiff

will typically know or have reason to know that a school mishandles their own report of an assault close to the time of the school's inadequate response." *Id.* at 704. The same plaintiff, however, "may have no reason to know of a school's deliberate indifference that gave rise to their heightened-risk claim." *Id*.

       d.  *Analysis*

The Court is persuaded by the Sixth Circuit's reasoning in *Snyder-Hill* and finds that it is consistent with Seventh Circuit precedent addressing the accrual date for federal civil rights actions generally. Although the Seventh Circuit has not expressly held that the discovery rule is applicable to Title IX claims, it has consistently applied the discovery rule to other federal civil rights claims, including claims arising under § 1983, *see e.g., Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n,* 377 F.3d 682, 688 (7th Cir. 2004); *Cathedral of Joy Baptist Church v. Vill. of Hazel Crest,* 22 F.3d 713, 717 (7th Cir. 1994); *Kelly v. City of Chicago,* 4 F.3d 509, 511 (7th Cir.1993). And, as previously discussed, relevant authority indicates that, for limitations purposes, Title IX is treated like Section 1983. *See e.g., Snyder-Hill,* 48 F.4th at 698 (collecting cases).

Accordingly, in the instant case, Plaintiff's Title IX claim accrued "when the alleged constitutional violation was complete, and [when she] knew of her injury and its cause." *Watson v. Metro. Enf't Grp. Of S. Illinois,* no. 23-1412, 2023 WL 5276607, at *2 (7th Cir. Aug. 16, 2023). Further, because Plaintiff's Title IX claim is against the School District for its alleged inaction, and not against the alleged perpetrators, Plaintiff's claim accrued when she learned that the *School District* injured her, *i.e.,* when Plaintiff learned that the

School District failed to act in response to reports about Defendant Mark Richardson's alleged misconduct.

Here, Plaintiff claims that, between 1995 and 2000, the District responded with deliberate indifference to reports from other individuals about Defendant Mark Richardson's inappropriate conduct at Woodlawn Elementary School. Thus, unlike a plaintiff who alleges an institution mishandled her own reports of misconduct, Plaintiff may not have discovered her injury when it occurred. Instead, like the plaintiffs in *Snyder-Hill*, plaintiff may not have discovered the alleged deliberate indifference that gave rise to her Title IX claim until well after it occurred. And, given the allegations in the Complaint, the Court cannot discern when Plaintiff made that discovery.

The School District also contends that, given the history of sexual abuse Plaintiff claims to have experienced on school property, she should have known of a potential Title IX violation as to the School District upon reaching the age of adulthood in 2004. But in the context of a federal civil rights claim, a "plaintiff's knowledge that he was abused is not enough to start the clock [against the institution]." *Snyder-Hill*, 48 F.4th at 705. Moreover, whether any knowledge Plaintiff possessed regarding the alleged sexual abuse would "point a reasonable person to inquire as to the District's" liability, is a question of fact that cannot be resolved at the motion-to-dismiss stage.

For these reasons, the School District's Motion to Dismiss as to Plaintiff's Title IX claim (Count I) is **DENIED**.

**B.  Illinois State Law Claim for Willful and Wanton Misconduct (Count II)**

The parties agree that the timeliness of Plaintiff's willful and wanton misconduct claim (Count II) is governed by the Illinois Childhood Sexual Abuse Act, 735 ILCS 5/13-202.2(b).[8] They disagree, however, on what version of the statute controls. The District contends the version of the statute that became effective on July 24, 2003 (the "2003 version") applies. That version, in relevant part, provides that a victim of childhood sexual abuse has ten years from the time he turns 18 years old or five years from the time he that he discovers the act of childhood sexual abuse occurred and that the injury was caused by the childhood sexual abuse to commence an action for damages. 735 ILCS 5/13-202.2(b) (amended 2011).

Plaintiff contends the version of the statute that became effective on January 1, 2011 (the "2011 version) or the current version of the statute (effective January 1, 2014), applies. The 2011 version amended the statute of limitations to 20 years from the time the victim turns eighteen or 20 years from the time the victim discovers the abuse and that the injury was caused by the abuse. 735 ILCS 202.2(b) (amended 2014). The current version of the statute abolishes the statute of limitations for actions seeking damages for childhood sexual abuse. 735 ILCS 202.2(f) (2023). Plaintiff maintains that her claim is timely under either the 2011 version or the current version of the statute.

---

[8] The statute of limitations included in the act applies to any "action for damages for personal injury based on childhood sexual abuse." 735 ILCS 5/202.2(f) (2023). This includes actions directed against a nonabuser where the abuser "had a duty to protect the child-victim." *Hobert v. Covenant Children's Home*, 309 Ill. App. 3d 640, 644 723 N.E.2d 384, 387 (2000). *See also Woods v. Illinois Dep't of Child. & Fam. Servs.*, 710 F.3d 762, 767 n.3 (7th Cir. 2013) ("Illinois courts have interpreted the Illinois Childhood Sexual Abuse Act to give rise to a cause of action against nonabusers based on their failure to protect.").

As a preliminary matter, the Court addresses the District's argument as to when Plaintiff discovered her abuse.[9] The District asks the Court to conclude that, as a matter of law, Plaintiff discovered the abuse, and that it was the cause of her alleged injury, in 2004 when she turned 18. According to the District, upon turning 18, given the horrendous abuse she allegedly experienced, Plaintiff should have known that her perpetrators' alleged conduct was inappropriate and illegal.  But at this stage of the litigation, this is an inference that cannot be drawn in the District's favor. *See Wisniewski v. Diocese of Belleville,* 406 Ill.App.3d 1119, 1165, 347 Ill.Dec. 753, 943 N.E.2d 43 (2011)(" 'Whether the injured person has become possessed of sufficient information concerning his or her injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved is usually a question of fact.' ") *(quoting Pruitt v. Schultz,* 235 Ill.App.3d 934, 936, 176 Ill.Dec. 674, 601 N.E.2d 1372 (1992)). Here, Plaintiff alleges a triggering event in 2014 where she had flashbacks and memories of the sexual abuse. Given this allegation, the Court finds Plaintiff has sufficiently alleged that she did not discover the abuse and its causal connection to her injury until 2014.[10] Accordingly, for purposes of this motion, the Court considers 2014, the date of Plaintiff's alleged triggering event, to be the date she discovered the abuse and its causal connection to her injury.

---

[9] In terms of when a cause of action accrues, the statute and applicable case law do not appear to differentiate between claims against an abuser and claims against a nonabuser with the duty to protect..

[10] Moreover, all of the subject versions of the statute provide that "[k]nowledge of the abuse does notconstitute discovery of the injury or causal relationship between any later-discovered injury and the abuse." 735 ILCS 5/13-202.2(b).

23

The amendments to the 2011 version[11] of the statute and the current version[12] of the statute apply retroactively. Nonetheless, the amendments are irrelevant if Plaintiff's claim expired before the enactment of the 2011 version or the 2014 version of the statute. *See Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 917 N.E.2d 475 (2009) (finding that the 2003 amendment to statute of limitations could not apply retroactively to revive plaintiff's claims, which expired under a prior version of the statute *before* the effective date of the 2003 amendatory act);. *See also M.E.H. v. L.H.*, 177 Ill.2d 207, 226 Ill.Dec. 232, 685 N.E.2d 335, 339 (Ill.1997) ("[O]nce a statute of limitations has expired, the defendant has a vested right to invoke the bar of the limitations period as a defense to a cause of action … [and that right] cannot be taken away by the legislature …").

Both the 2011 version of the statute and the current version include provisions making their amendments retroactive so long as the action was commenced on or after the effective date of the applicable amendatory act and so long as "the action would not

---

[11] The 2011 version of the statute provides:

> This Section applies to actions pending on the effective date of this amendatory Act of 1990 as well as to actions commenced on or after that date. The changes made by this amendatory Act of 1993 shall apply only to actions commenced on or after the effective date of this amendatory Act of 1993. The changes made by this amendatory Act of the 96th General Assembly apply to actions commenced on or after the effective date of this amendatory Act of the 96th General Assembly if the action would not have been time barred under any statute of limitations or statute of repose prior to the effective date of this amendatory Act of the 96th General Assembly.

735 ILCS 5/13-202.2(e) (amended 2014).

[12] The current version of the statute provides:

> Notwithstanding any other provision of law, an action for damages based on childhood sexual abuse may be commenced at any time; provided, however, that the changes made by this amendatory Act of the 98th General Assembly apply to actions commenced on or after the effective date of this amendatory Act of the 98th General Assembly if the action would not have been time barred under any statute of limitations or statute of repose prior to the effective date of this amendatory Act of the 98th General Assembly.

735 ILCS 5/13-202.2(f) (2023).

have been time barred under any statute of limitations or statute of repose prior to the effective date of" applicable amendatory act. 735 ILCS 5/13-202.2(e)(amended 2014) and 735 ILCS 5/13-§202.2(f)(2023).

Here, under the 2003 version of the statute, Plaintiff's claim would not have been time barred until 2014 (10 years after she turned 18) or until 2019 (5 years after she discovered the abuse and its causal relationship to her injury). Thus, regardless of whether Plaintiff's claim accrued in 2004 when she turned 18 or in 2014 when she discovered the abuse, the District's right to assert a statute of limitations defense under the 2003 version of the statute had not vested as of the enactment of the 2011 version of the statute. As such, Plaintiff may "may take refuge under the 20-year limitations period" in the 2011 version of the statute. *Doe v. Cotterman*, No. 17 C 58, 2018 WL 1235014 (N.D. Ill. Mar. 9, 2018) *(because plaintiff's claim did not expire prior to enactment of the 2011 version of the statute, 20-year statute of limitations applied). Further, given the allegations in the Complaint, Plaintiff's claim may not have expired prior to the enactment of the current version of the statute in 2014. As such, it is possible that Plaintiff's claim is not subject to a statute of limitations.

For these reasons, the District's Motion to Dismiss Plaintiff's Illinois claim for Willful and Wanton Misconduct (Count II) is **DENIED**.

### IV.    Conclusion

For the reasons set forth herein, the Motion to Dismiss filed by Defendant Woodlawn Unit School District #209 (Doc. 31) is **DENIED**.

**SO ORDERED.**

Dated: September 25, 2023

DAVID W. DUGAN
United States District Judge